UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD SWEATT,

     Plaintiff,          Case No.  12-12257

v.                 Paul D. Borman
                  United States District Court

BLACKMAN TOWNSHIP OFFICER
BRENT DOXTADER,

     Defendant.
_____/

## OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 12)

   This civil rights case arises from circumstances surrounding Plaintiff Ronald Sweatt's

("Plaintiff") arrest following a domestic assault on May 24, 2010.  The complaint was filed on

May 23, 2012.  (Dkt. No. 1).

   Now before the Court is Defendant Officer Brent Doxtader's ("Officer Doxtader")

Motion for Summary Judgment filed on March 1, 2013.  (Dkt. No. 12).  Plaintiff responded on

April 1, 2013.  (Dkt. No. 17).  Officer Doxtader then filed a reply.  (Dkt. No. 18).  A hearing on

this matter was held on November 22, 2013.

   For the reasons stated below, the Court DENIES Officer Doxtader's Motion for

Summary Judgment.

## I.  BACKGROUND

   The Court views the record in the light most favorable to Plaintiff and sets forth the facts

of the case drawing all reasonable inferences in his favor.  *See Matsushita Electric Industrial*

*Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 547, 587 (1986).  The Court notes that this

case involves an audio recording that accompanies a dashboard camera video.  The dash-camera was continuously pointed at Plaintiff's residence; it captures only limited activity.  Only where Plaintiff's version of the facts is silent or "blatantly contradicted" by the audio recording captured from Officer Doxtader's on-person microphone and at times the in-car microphone, will the Court rely upon the recordings.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Coble v. City of Whitehouse, Tenn.*, 634 F.3d 865, 868 (6th Cir. 2011); Def.'s Br. Ex. 4, DVD.

## A.    Doxtader Arrives at the Scene

On May 24, 2010, Officer Doxtader was dispatched to Plaintiff's Blackman Township residence for an alleged domestic assault. (Def.'s Br. Ex. 2, Police Report at 1, 4 & 5).

Officer Doxtader was met at Plaintiff's residence by Plaintiff's step-daughter, Daniella Treciak, who had called 911 to report the incident.  (Police Report at 5; Def.'s Br. Ex. 3, Doxtader Dep. 18).  Daniella informed Officer Doxtader that Plaintiff, his wife, and their other daughter, Sierra Sweatt, were involved in an argument regarding Sierra's newborn daughter and whether Sierra's ex-boyfriend should have been allowed to take the baby for a visit.  (Def. Br. Ex. 1, Daniella Treciak's Witness Statement).  At some point during the argument, Plaintiff threw a Bic lighter which hit the wall and ricocheted into Sierra's eye.  (Def.'s Br. Ex. 6, Plf.'s Dep. 58; Daniella Treciak's Witness Statement, "he [] then threw a lighter that hit Sierra in the face."; Police Report at 5).  After Sierra was injured, Daniella entered the argument "yelling at Ron saying 'what did you do that for and why.'"  (Daniella Witness Statement).  Plaintiff then allegedly hit Daniella in the face.  (*Id.*; Def.'s Br. Ex. 5, Daniella Treciak's Dep. 21; Def.'s Br. Ex. 4, DVD, 00:00:52-00:02:00).  Plaintiff testified that he does not remember if he hit Daniella in the face.  (Plf.'s Dep. 63).

2

Prior to Officer Doxtader arriving at the scene, Plaintiff left the residence after learning Daniella was going to call the police. (Plf.'s Dep. 68, 79). Plaintiff testified that he left the residence because he wanted no more of the "ruckus" and also because he did not want to be arrested or go to jail. (*Id*. 66-68). Plaintiff has three prior convictions. (Plf.'s Dep. 44). Plaintiff further testified that after leaving his house he went around the fence to the back parking lot of a Red Lobster which abutted his yard. (*Id*. 73-76; *see also* Plf.'s Dep. Ex. 4, Plaintiff's Diagram). He then positioned himself between two storage sheds that were off-set from the fence by a few feet so he would be hidden from police when they arrived. (Plf.'s Dep. 73-74, 79-80).

While Plaintiff hid in the nearby Red Lobster parking lot, Officer Doxtader noted the injuries to Sierra and Daniella, and requested an ambulance be sent to the residence. (Police Report at 5, DVD, 00:02:00-00:02:33). The injury to Sierra's eye was noted to be swollen, red and bloodshot, and Daniella's left temple and left side of her face was red. (Police Report at 5; Def.'s Br. Ex. 7, Picture of Sierra's Injury; Def's Br. Ex. 8, Picture of Daniella's Injury). Officer Doxtader also radioed Plaintiff's description to dispatch and notified them that he had fled the scene on foot. (DVD, 00:01:20-00:03:12). Daniella explained to Officer Doxtader that her "step-dad has a bad temper" and that he had been really "moody" lately. (DVD, 00:04:17-00:04:20 and 00:07:37:00-7:48:10).

Approximately fifteen minutes after Officer Doxtader arrived at Plaintiff's residence the ambulance crew arrived. (DVD, 00:15:19). Plaintiff's cousin, Eric Treciak, then arrived at Plaintiff's residence on his motorcycle and walked in the side door. (DVD, 00:19:45:00).

After treating Sierra, the ambulance left Plaintiff's residence. (DVD, 00:22:13). Plaintiff

testified that upon seeing the ambulance leave he became concerned about his daughter and he came out from between the sheds and looked over the fence into his yard.  (*Id*. 73, 80).  While peeking over the privacy fence, Plaintiff made eye contact with Officer Doxtader. (Plf.'s Dep. 80).  Plaintiff testified that "[Officer Doxtader] was looking right at me, and when he did, I thought, God, I've had it.  Then I started walking in a westerly direction."  (*Id*. 80:17-18).  When Officer Doxtader saw Plaintiff over the fence he radioed dispatch to inform them it appeared Plaintiff was in the area and requested backup.  (DVD, 00:25:21-26:16).  Officer Doxtader then ran after Plaintiff.  (DVD, 00:25:49-00:26:09:00; Police Report at 5; Doxtader Dep. 14).

**B.      Plaintiff's version of the Apprehension**

Plaintiff testified that after he locked eyes with Officer Doxtader over the fence he walked away because he didn't want to be arrested.  (Plf.'s Dep. 81).  Plaintiff states that he had his back to Officer Doxtader when Officer Doxtader first called out, "stop, stop" and "[g]et on the ground."  (Plf.'s Dep. 84).  Plaintiff testified that in response to Officer Doxtader's commands he stopped, laid face down on the ground, and put his hands behind his back.  (Plf.'s Dep. 84-86).  Plaintiff testified that while laying on the ground and not moving, Officer Doxtader first pepper sprayed him in the side of the face, then forcibly kneed him in the back, and then handcuffed him.  (Plf.'s Dep. 87-89, 92).

Plaintiff's nephew,  Eric Treciak, testified that he was standing on the front porch and witnessed the incident.  (Plf.'s Br. Ex. 5, Eric Treciak Dep. 39-40).  Eric testified that he saw Plaintiff walking away from Officer Doxtader.  (E. Treciak Dep. 39-40).  Eric testified that he saw Officer Doxtader go around the fence and yell freeze or stop and witnessed Plaintiff get "on his stomach and put his hands behind his back".  (E. Treciak Dep. 41-42).  Then Eric ran off the

4

front porch to the end of the fence and watched as Officer Doxtader approached Plaintiff and said "don't move" and pepper sprayed him in the face while he was lying on the ground. (*Id*. 41-45). Eric also testified that "the officer reached for his handcuffs and like he picked, I want to say it was his left knee ... whatever one it was, he picked up his foot and like he fell onto Ron's back with his knee." (*Id*. 47:14-18-48).

**C.     Officer Doxtader's version of the Apprehension**

Officer Doxtader disputes Plaintiff and Eric's version of events. Officer Doxtader testified that he chased after Plaintiff by running to the end of the fence. (Doxtader Dep. 16-17). By the time he reached the end of the fence, he could see Plaintiff running westbound towards the sheds in the Red Lobster parking lot. (Doxtader Dep. 16-17; Doxtader Dep. Ex. 1, Doxtader Diagram). Officer Doxtader further testified that he instructed Plaintiff to stop and get on the ground approximately four times but Plaintiff failed to stop and ran between two sheds. (Doxtader Dep. 18-20; DVD, 00:26:10-00:26:20, Audio of Officer Doxtader issuing the commands "get on the ground" and "get over here".). Officer Doxtader then states that as Plaintiff ran from him, he pepper sprayed the side of Plaintiff's face as Plaintiff turned back towards Office Doxtader. (Doxtader Dep. 20). At that point, Plaintiff screamed and walked back out from between the sheds and Officer Doxtader grabbed on to his right arm and then took him to the ground. (*Id*. 21, 24-26). Officer Doxtader claims he then placed a knee in Plaintiff's back to hold him to the ground and administered the handcuffs one hand at a time. (*Id*. 27-28). Officer Doxtader explained the procedure for placing a knee in a suspect's back: "One of our techniques is you actually will place a knee in their back to hold them to the ground and at which time then you bring an arm behind the back, place and administer a handcuff, and then bring the

5

second arm up and administer the second handcuff." (*Id*. 27:18-22).

**D.     After the Arrest**

After handcuffing Plaintiff, Officer Doxtader escorted him to the police car and asked Plaintiff "why did you run?", and Plaintiff did not answer. (DVD, 00:27:12; Doxtader Dep. 31). Plaintiff was placed in the back of the police car; Officer Doxtader requested an ambulance for Plaintiff. (Doxtader Dep. 31-32). At this point, Officer Doxtader also read Plaintiff his Miranda rights. (DVD, 00:32:50). Officer Doxtader then left the scene with Plaintiff to meet the ambulance in a nearby parking lot to ensure that the domestic incident did not escalate. (Doxtader Dep. 33; DVD, 00:42:30). On the way to the parking lot, Officer Doxtader asked Plaintiff again why he ran and Plaintiff did not answer. (DVD, 00:34:45).

The ambulance arrived and Plaintiff was evaluated. The "run sheet" noted that Plaintiff complained of "eye irritation" which occurred after being "pepper sprayed". (Def.'s Ex. 10, JCA Run Sheet at 1-2). Plaintiff's breathing was noted to be rapid but unlabored and there was no evidence of chest, back or spinal injury. (*Id*.). Plaintiff's eyes were flushed with saline and he was put back in the police car. (*Id*.).

Plaintiff was taken to jail where he complained about pain in his back. (DVD, 00:59:14-00:59:30). While being escorted into the jail, Officer Doxtader asks again "why did you run from me?" (DVD, 01:01:05). Plaintiff responds by stating, "I was scared. I got out of the house, that's what I wanted. There was [garbled] yelling and screaming." (DVD, 01:01:08-01:01:13). Plaintiff then filled out a processing form in which he only noted his diabetic condition, bad right knee and left shoulder. (Def.'s Br. Ex. 11, Medical Screening Questionnaire at 2).

Plaintiff was released from jail approximately two days later. (Plf.'s Dep. 27). Upon

6

release, Plaintiff went to Allegiance Hospital emergency department complaining of blood in his urine and back pain. (Plf.'s Dep. 28; Plf. Br. Ex. 4, Emergency Dept. Chart, 5/25/2010). He was treated and released. (Plf.'s Dep. 28-29). Approximately three or four days later, Plaintiff returned to the hospital after he developed problems breathing. (Plf.'s Dep. 28; Plf.'s Br. Ex. 4, Allegiance Health, Imaging Services Document, 5/31/2010). Plaintiff stated he was hospitalized for approximately four days and was told his left lung was full of blood due to trauma. (Plf.'s Dep. 30). Plaintiff's lung was drained.[1] (*Id*. 30-31). After being discharged from the hospital, Plaintiff received oxygen and was treated by a respiratory therapist. (*Id*. 32).

Plaintiff filed this action on May 23, 2012 alleging Officer Doxtader used excessive force in arresting him in violation of the Fourth Amendment of the Constitution and also that Officer Doxtader's actions violated state law. Officer Doxtader disagrees and contends that the record fails to set forth an issue for the jury.

## II. LEGAL STANDARD

Officer Doxtader has moved for summary judgment under Rule 56(c) of the Federal

---

[1] Plaintiff's medical chart states:

1. No pulmonary embolus.
2. Large left pleural effusion with near complete collapse of the left lung and mediastinal shift toward the right. Additionally, areas of high attenuation material are noted inferiorly within the left pleural fluid collection which may represent areas of hemorrhage. Pulmonary parenchymal contusion or laceration cannot be excluded.
3. Nondisplaced fracture involving the posterior left eleventh rib and left L1 and L2 transverse processes.
4. Patchy and confluent areas of opacity scattered throughout the right lung are nonspecific but may relate to an infection process or pneumonitis.

(Allegiance Health, Imaging Services Document, 5/31/2010 at 2).

Rules of Civil Procedure.  This rule provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The moving party bears the initial burden of showing that there is no genuine issue of material fact.  *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 547, 587 (1986).  Once this burden is met, the opposing party must produce some facts showing there is a genuine issue for trial.  *Id*.  If a rational trier of fact could not, based on the record as a whole, find in favor of the party opposing summary judgment, then summary judgment is granted in favor of the moving party.  *Id*.  The Court must view the facts and draw all reasonable inferences in favor of the non-moving party.  The Court does not determine if all of the evidence favors one side or the other, but "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III.  ANALYSIS

Officer Doxtader has moved for summary judgment on three separate grounds.  First, that Plaintiff fails to establish a genuine issue of material fact for trial because Plaintiff and his nephew's version of the events is blatantly contradicted by the audio recording.   Second, Officer Doxtader contends even if the Court accepts Plaintiff's version of the events as true there is still no evidence of excessive force.  And finally, Officer Doxtader argues that he is entitled to qualified immunity.

**A.       Is Plaintiff's Version of the Events "Blatantly Contradicted"?**

As set forth *supra*, in deciding a motion for summary judgment the court must view the

facts in a light most favorable to Plaintiff.  In this action, however, Officer Doxtader relies upon *Scott v. Harris*, 550 U.S. 372 (2007) and contends the Court must reject Plaintiff's version of events because it is contradicted by the audio recording and the record as a whole.

In *Scott*, the Supreme Court held that a police officer was entitled to summary judgment on an excessive force claim despite the officer and the motorist setting forth conflicting testimony regarding the events at issue.  *Scott*, 550 U.S. at 386.  In evaluating the motion for summary judgment, the lower court had adopted the motorist's version of events and found that it created a genuine issue of material fact.  *Id*. at 379.  In reversing the lower court's finding, the Supreme Court relied upon a videotape that captured the events to find that the motorist's version of the events were "so utterly discredited by the record that no reasonable jury could have believed him."  *Id*. at 380.  As a result, the Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id*. (*see also Coble v. City of Whitehouse, Tenn*., 634 F.3d 865, at 868-69 (6th Cir. 2011) (recognizing the *Scott* reasoning extends to cases involving audio recording rather than videotape.).

The Court rejects Officer Doxtader's argument that the record "blatantly contradicts" Plaintiff's version of the events.  Rather than *Scott*, the facts in the instant case are more analogous to the Sixth Circuit case, *Coble*.  In *Coble*, an excessive force case, the Sixth Circuit examined the issue of whether the lack of certain sounds on an audio recording could be reliably used to discount a plaintiff's testimony that he screamed, named-called and was eventually "splattered" on the pavement.  *Coble*, 634 F.3d at 869.  The Sixth Circuit noted that the

9

argument in *Coble* could be differentiated from *Scott*,

> where there were no allegations or indications that the recording was doctored or altered in any way, or any contention that what it depicted differed from what actually happened.  <u>Here, in contrast to the plaintiff in *Scott*, Coble does not merely characterize the recording differently.  Rather, Coble insists that the facts differed from what was recorded.</u>

*Id*. (emphasis added).

In a recent Sixth Circuit case, *Toner v. Village of Elkton*, No. 12-2601, --- Fed. Appx. ---, 2013 WL 6183005 (Nov. 26, 2013), the court reversed a lower court in finding that where the plaintiff's claims were plausible and could not be entirely discredited, and the "video and audio recording and surrounding circumstances could neither prove nor disprove" the plaintiff's testimony, the record cannot be said to be "blatantly contradicted." *Id.* at *7; *see also Dixon v. Cnty of Roscommon*, 479 Fed. Appx. 680, 682 (6th Cir. 2012) (per curium) (holding a video recording "neither prove[d] nor disprove[d] Dixon's claim" when plaintiff claimed to have been choked off-camera after being subdued by police.).

In the instant action, Plaintiff testifies that he complied with Officer Doxtader's spoken commands to get on the ground after initially attempting to walk away from him.  (Plf.'s Dep. 80, 84-87).  Plaintiff testified that he was pepper sprayed in the face while laying on the ground and then kneed in the back so hard that some five or six days later he was diagnosed with fractured ribs and his lung collapsed and filled with blood.  (Plf.'s Dep. 28-32, 84-89).  His nephew's testimony and Plaintiff's medical record corroborate these facts.  (E. Traciak Dep. 39-45; Plf.'s Dep. Ex. 4, Medical Records).

The audio recording does substantiate that Officer Doxtader observed Plaintiff peeking over the fence, he ran after Plaintiff, he yelled "get over here" and "get on the ground" multiple

times.  (DVD, 00:25:23-00:26:43).  However, the audio recording does not prove (or disprove) that Plaintiff was pepper sprayed while lying prone on the ground.  Significantly, the most pertinent minute of sound on the audio tape is at times garbled and indecipherable.  (DVD, 00:25:23-00:26:43).

Similar to *Coble*, Plaintiff here does not attempt to "characterize" the recording differently, his contention is that it does not capture or convey what actually happened.  The Sixth Circuit cautioned in *Coble* that

> [e]ven if part of Coble's testimony is blatantly contradicted by the audio recording, that does not permit the district court to discredit his entire version of events.  We allow cases to proceed to trial even though a party's evidence is inconsistent, because in reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited.

*Coble*, 634 F.3d at 870 (internal citation omitted).  Just as in *Coble*, Plaintiff's version of events cannot be "blatantly contradicted" by the audio recording because the recording fails to capture the events in their totality.  Also, similar to *Toner*, the garbled audio is incapable of proving or disproving Plaintiff's version of events.  Therefore, unlike *Scott*, where the Supreme Court had a video tape that revealed the events to be characterized, here, the Court has an audio recording of (garbled) sounds that are open for interpretation.

As a result, the Court finds that it must accept Plaintiff's version of the facts in evaluating this motion for summary judgment.

**B.     Count I - § 1983 Excessive Force**

Officer Doxtader next argues that summary judgment should be granted even if Plaintiff's version of events is accepted because there is no evidence that the force used was excessive.  To this end, Officer Doxtader argues that even if Plaintiff was pepper sprayed in the

11

face and kneed in the back while lying on the ground after surrendering, the force was objectively reasonable.

In order to make a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish a violation of an existing constitutional right by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001). "The Fourth Amendment of the United States Constitution protects a person from being subjected to excessive physical force during the course of an arrest, a booking, or other police seizure." *Malory v. Whiting*, 489 Fed. Appx. 78, 81 (6th Cir. 2012) (citing *Drogosch v. Metcalf*, 557 F.3d 372, 378 (6th Cir. 2009)). As the Sixth Circuit recently stated, to make a showing of excessive force "[u]nder the Fourth Amendment, we apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." *Burgess v. Fischer*, --- F.3d ---, No. 12-4191, 2013 WL 5873323, at *4 (6th Cir. Nov. 1, 2013) (citing *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004)); *see also Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

Three factors guide the Court's analysis in this inquiry: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (citing *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005)). The calculus of reasonableness must also be "assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight."

*Burgess*, at * 4 (citing *Graham*, 490 U.S. at 396-97); *accord Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). The United States Supreme Court has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396.

Officer Doxtader contends that it was reasonable for him to pepper spray Plaintiff in the face and then knee him in the back while he lay on the ground not resisting arrest because Plaintiff had attempted to flee the scene twice, he had been involved in a violent domestic altercation, and he "had a bad temper." (Plf.'s Br. 15). Given these facts, Officer Doxtader could have reasonably believed that Plaintiff would resort to additional violence and also that Plaintiff remained a threat even while laying on the ground in apparent submission. (Def.'s Br. 16 n. 6). Officer Doxtader cites *Dunn v. Matatall*, 549 F.3d 348 (6th Cir. 2008) in support of his position.

In *Dunn*, the suspect led police on a two minute high speed chase until he finally pulled over and stopped driving. *Id*. at 351. The suspect then complied with the officer's commands to place the car keys outside of the car but confusion arose when the officer attempted to remove him from the car and the suspect yelled he was caught on the seatbelt. *Id*. Eventually the suspect yelled "okay" and "I'm coming, I'm coming." *Id*. The officers then physically pulled him from the vehicle, but dropped him and broke his femur. *Id*. at 351-52. In determining that the officer's actions were reasonable, the Sixth Circuit explained:

> [a]lthough Dunn's statement, "I'm coming, I'm coming," may indicate that he had decided to exit the vehicle on his own, only seconds elapsed between the time the seatbelt was unfastened and when Dunn was pulled out of the car, giving the Officers little opportunity to fully comprehend whether Dunn had finally decided to become compliant. It was reasonable for the Officers still to consider Dunn resistant. As Sergeant Porter stated, "at what point do we then trust this resistant

13

person to suddenly say, okay , I give up."

*Id*. (citation omitted).

The instant case, however, is easily distinguishable from *Dunn*.  First, although Plaintiff had committed a domestic assault, Plaintiff had not led Officer Doxtader on a car chase that endangered his life or the lives of innocent bystanders. There is also nothing in the record that would have given Officer Doxtader reason to believe that Plaintiff was armed with a gun or other dangerous weapon as his crime was committed with his hand and a Bic lighter.  Although it is true that Plaintiff left the scene twice, Plaintiff's final attempt to "elude" police consisted of him turning around and walking away from his residence.  This last attempt to flee also lasted no more than a minute.  (DVD, 00:25:23 (Officer Doxtader radios he has seen Plaintiff over the fence) - 00:26:43 (Officer Doxtader radios he has Plaintiff in custody))*; see Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 607-08 (6th Cir. 2006) (recognizing "that Baker had attempted to evade arrest does not preclude his claim of excessive force against Officer Taylor or render Officer Taylor's use of his asp reasonable.").  Indeed, Plaintiff testified that at the time Officer Doxtader used force against him he had surrendered and was on the ground with his arms behind his back.  *See Dickerson v. McClellan*, 101 F.3d 1151, 1162 (6th Cir. 1996) ("[I]n reviewing the plaintiffs' excessive force claim, we limit the scope of our inquiry to the moments preceding the shooting.").  Finally, in *Dunn*, the Sixth Circuit recognized the specific facts that brought them to the conclusion that the officers' actions were reasonable:

> [o]verall, given the heightened suspicion and danger brought about by *the car chase* and the fact that an officer could not know what other dangers may have been *in the car*, forcibly removing Dunn from the car to contain those potential threats was objectively reasonable.

*Id*. at 355 (emphasis added).  In this case, those particular facts (i.e. a car chase and the dangers

14

presented by attempting to apprehend a suspect in a vehicle) are not present.

Plaintiff's version of events is more factually analogous to *Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009) in which the Sixth Circuit upheld the denial of qualified immunity on an excessive force claim based on the deployment of pepper spray.  In finding that there was evidence of a constitutional violation, the Sixth Circuit noted that the plaintiff's crime (disturbing the peace) was a minor one, he did not pose a threat to officers because he was unarmed at the time he was pepper sprayed and he was not "actively resisting arrest or trying to flee at the time he was pepper sprayed." *Id.* at 311.  The Sixth Circuit explicitly stated that "[t]he general consensus among our cases is that officers cannot use force, including pepper spray ... on a detainee who has been subdued ... or is not resisting arrest." *Id.* at 314.

Similar to *Grawey*, Plaintiff was unarmed at the time he was pepper sprayed and kneed in the back and he also claims he was not actively resisting arrest.  Although Plaintiff's crime of domestic assault is more serious than the underlying crime in *Grawey*, there is still no evidence that Plaintiff was behaving in an aggressive, threatening way at the time Officer Doxtader used his pepper spray and kneed him in the back, indeed, Plaintiff testified he was laying on the ground with his arms behind his back.

Therefore, in examining the totality of the circumstances in this case and taking the facts in a light most favorable to Plaintiff, the Court finds that there are genuine issues of material fact regarding whether Officer Doxtader violated Plaintiff's Fourth Amendment rights.[2]

---

[2] The Court also notes that Plaintiff's alleged injuries ultimately required four or five days of hospitalization.  To the extent Officer Doxtader argues that the passage of time between Plaintiff's arrest and his hospitalization for a collapsed lung and broken ribs goes against finding the injuries are attributable to Officer Doxtader, this argument is one better left to the jury.

C.      **Qualified Immunity**

Officer Doxtader claims that even if the Court finds that there is a genuine issue of material fact regarding whether he used excessive force in arresting Plaintiff, he is still not subject to suit because he is entitled to qualified immunity and therefore summary judgment should still be granted.  The Court disagrees.

The doctrine of qualified immunity generally protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The purpose of qualified immunity is to "shield the official from suit altogether, saving him or her from the burdens of discovery and costs of trial."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). This doctrine protects government officials from civil liability unless, "in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights." *Jones v. Byrnes*, 585 F.3d 971, 974 (6th Cir. 2009).

There are two relevant inquiries in determining whether a defendant is entitled to qualified immunity: (1) "whether viewed in the light most favorable to plaintiff, the facts show that the officer's conduct violated a constitutional right[,]" and (2) "whether the constitutional right was 'clearly established' at the time of the violation."[3]  *Id*. at 975.  The order of the inquiry

---

[3] Some Sixth Circuit panels have also used a "third step requiring the court to determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established right." *Grawey*, 567 F.3d at 309 (citations omitted).  However, the Sixth Circuit has recognized that the third step is redundant in excessive force cases because "the defendant's conduct must have been unreasonable to find a constitutional violation" and therefore the two-step analysis should be employed. *Id*.

is no longer mandatory and Courts are permitted to use their discretion in deciding which of the two steps of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In the present case, the Court has already found that there is a genuine dispute over material facts regarding whether Officer Doxtader violated Plaintiff's Fourth Amendment rights.

Therefore, the Court turns to the "clearly established" prong of the analysis. "The key determination is whether a defendant moving for summary judgment on qualified immunity ground was on notice that his alleged actions were unconstitutional." *Grawey*, 567 F.3d at 313 (citing *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005)). A plaintiff must show that the constitutional right was clearly established "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The Court "look[s] first to decisions of the Supreme Court, then to decision of the [Sixth Circuit Court of Appeal] and other districts within our circuit and finally to decisions of other circuits" when determining if a law is clearly established." *Key v. Grayson*, 179 F.3d 996, 999-1000 (6th Cir. 1999).

Here, the question is whether it was clearly established on May 24, 2010 that pepper spraying a suspect after the suspect readily complied with an officer's orders by lying on the ground with his hands behind his back constituted excessive force.[4] The Court finds that this right was clearly established. As examined *surpa*, in *Grawey*, the Sixth Circuit held that "[t]he general consensus among our cases is that officers cannot use force ... on a detainee who has

---

[4] The Court reject's Plaintiff's argument that the right should be defined more generally as the right to be free from excessive force unless perceived as a threat to the arresting officers or others. (Plf.'s Br. at 12). Defining the right so generally is inappropriate in a case such as this where the very particular circumstance of pepper spraying occurred.

been subdued — or is not resisting arrest." *Grawey*, 567 F.3d at 314 (6th Cir. 2009); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) (noting that the use of pepper spray is excessive force when the detainee surrenders, is secured, and is not acting violently); *Cabaniss v. City of Riverside*, 231 Fed. Appx. 407 (6th Cir. 2007) (citing *Champion* for the "general rule" that the use of pepper spray constitutes excessive force when the detainee surrenders, is secure, is not resisting and does not pose a threat.)

Significantly, the Court notes that Officer Doxtader should be personally aware of this clearly established right as the Blackman Charter Township Department of Public Safety Use of Force Policy specifically notes that a chemical agent may only be properly deployed when a person "is committing an assault and battery or resisting a lawful arrest, and does not comply with the officer's verbal command..." (Def.'s Br. Ex. 13 at 8). Further, the Use of Force Policy states, "[c]hemical agents shall not be used when a person is incapacitated..." (*Id.* at 9) (emphasis added). In the instant case, Plaintiff has testified that he complied with Officer Doxtader's commands and was laying prone on the ground at the time he was pepper sprayed and kneed in the back. Therefore, viewing the record in a light most favorable to Plaintiff, a jury could find that Officer Doxtader's actions violated Blackman Township's own policies.

Further, the Court finds that it was clearly established as of May 24, 2010, that a suspect had the right to be free from being forcibly kneed in the back while not actively resisting arrest and lying on his stomach on the ground not resisting arrest. Indeed, the Sixth Circuit held in *Champion* that "it is also clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force." *Id.* 380 F.3d at 903; *see also Lawler v. City of Taylor*,

18

2008 WL 624770, at *3 (6th Cir. 2008) (jury could find it unreasonable that an officer used "knee strikes and elbow jab" after suspect on the ground with the officer on top of him.).  In *Champion*, the suspect died of asphyxiation due to the significant pressure on his back after he surrendered and was not actively resisting arrest.  *Champion*, 380 F.3d at 903.  Obviously, Plaintiff did not suffer from asphyxia in this case.  However, Plaintiff was kneed after he surrendered and was similarly laying prone on the ground.  Further Plaintiff's injuries - two broken ribs and a collapsed lung full of blood- could easily support an argument that Officer Doxtader would be on notice that the pressure he exerted was similarly "significant".

Officer Doxtader argues if there was a constitutional violation the force falls within the "hazy border between excessive and acceptable force" and therefore cannot be said to be clearly established.  The Court rejects this argument where there is case law on point predating May 24, 2010 that clearly establishes the right to be free from being pepper sprayed and kneed while laying on the ground not resisting arrest and complying with an officer's commands.

For these reasons, the Court finds Officer Doxtader is not entitled to qualified immunity for Plaintiff's claims of excessive force.

**D.      Count II - State Law Claim of Assault and Battery**

Officer Doxtader also moves for summary judgment on Plaintiff's state law claim for assault and battery.

Under Michigan law, a plaintiff alleging an assault must prove an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact."  *Malory*, 489 Fed.

19

Appx. at 86 (quoting *VanVorous v. Burmeister*, 292 Mich. App. 467, 482-83 (2004)). Battery is a "wilful and harmful or offensive touching of another person, which results from an act intended to cause such a contact." *Id.* Michigan law also allows that a police officer can use reasonable force to effect the arrest. *Tope v. Howe*, 179 Mich. App. 91, 106 (1989). "[T]he measure of necessary force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary." *Brewer v. Perrin*, 132 Mich. App. 520, 528 (1984) (quotation omitted).

As the Court finds there is a genuine issue of material fact regarding whether Officer Doxtader's use of force was reasonable as a matter of law (examined *supra*), there similarly exists a question of fact regarding Plaintiff's state law claims of assault and battery. *See Grawey,* 567 F.3d 315-16 (affirming the denial of summary judgment on state law claim of assault and battery when the court determined an officer's use of force was not reasonable for qualified immunity purposes); *see also Wilkerson v. Warner*, 2013 WL 5878212, at *19 (6th Cir. Oct. 31, 2013) (holding that where the Court finds an officer's use of force is not reasonable as a matter of law, then a question of fact exists regarding a claim for assault and battery.)

E.   **Governmental Immunity**

Finally, Officer Doxtader argues that the is entitled to governmental immunity with regard to Plaintiff's assault and battery claim. Michigan law grants governmental immunity to a police officer facing an assault and battery claim if: (1) the officer acted within the scope of his employment or reasonably believed he was acting within the scope of his employment, and (2) the acts were undertaken in good faith, and (3) his conduct was discretionary rather than ministerial. *Malory*, 489 Fed. Appx. at 86 (citing *Odom v. Wayne Cnt'y*, 482 Mich. 459, 479

20

(2008)).

In the present action, Officer Doxtader contends that he believed he was acting within the scope of his authority, and assumes without argument that he was preforming a discretionary task in good faith. Plaintiff avers that Officer Doxtader is not entitled to immunity because he did not act in good faith. The Sixth Circuit has recently noted "[t]he question of an officer's good faith under Michigan [governmental immunity] law overlaps considerably, if not entirely, with our analysis of whether the officer's actions were objectively reasonable under the circumstances [in evaluating an excessive force claim]." *Malory*, 489 Fed. Appx. at 86 (citing *VanVorous*, 292 Mich. App. 467, 482-83). As a result, the Sixth Circuit has held that a good-faith basis inquiry would track an inquiry regarding the "objective reasonableness of Defendants' actions under the Fourth Amendment and leads to the same result." *Id*. at 86-87.

Therefore, following the reasoning in *Malory*, the Court finds that an inquiry of whether Officer Doxtader had a  good-faith basis for his actions would exactly track the inquiry of whether his actions were objectively reasonable under the Fourth Amendment. Plaintiff has testified that he was lying on his stomach with his hands behind his back and was not actively resisting arrest when he was pepper sprayed in the fact and forcibly kneed in the back. Plaintiff also testified that he immediately complied with Officer Doxtader's commands. Based on Plaintiff's version of the facts, a jury could find that less force could have been used to arrest Plaintiff and find that Officer Doxtader's action were not in good faith. Accordingly, the Court finds that there exists a genuine issue of material fact as to whether Officer Doxtader acted in good faith and governmental immunity on the asserted state law claims of assault and battery are denied.

**IV. CONCLUSION**

For the reasons stated above, the Court DENIES Defendant's Motion for Summary

Judgment (Dkt. No. 12).

**IT IS SO ORDERED.**


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  December 11, 2013



CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or
party of record herein by electronic means or first class U.S. mail on December 11, 2013.


s/Deborah Tofil
Case Manager

22